ALBANY,
Feb. 1828.
——————
Burlingame
v.
Burlingame.

---

## BURLINGAME *against* BURLINGAME.

Where one prosecuted for felony before a justice, and swore to the felony on the examination; and the accused went into his defence, the scope of which was to show that the prosecutor was mistaken in his testimony; and the justice discharged the accused; *held*, that an action for malicious prosecution would not lie, the testimony of the prosecutor making out probable cause.

The prosecutor stated the crime and its circumstances, before the prosecution, to a constable confidentially, informing him that he should prosecute, and wished him to serve the process. *Held*, that this was slander, and not excused by the circumstances.

He also, after the examination before the justice, and acquittal of the accused, repeated his testimony before the justice, and urged its truth to several persons who were present at the examination, insisting that the crime charged had been committed. *Held*, slander; and not excusable because spoken to persons so present.

SLANDER and malicious prosecution, tried at the Chenango circuit, in July, 1826, before NELSON, C. Judge.

The alleged slander was set forth in the two first counts of the declaration, and the malicious prosecution in the third; and were for charging the plaintiff with the crime against nature by a connection with the defendant's cow. It was proved by Anderson Crandall, a witness for the plaintiff, that he, being at the defendant's house, the defendant, about 80 years of age, said he had something to [*142] *tell Crandall in private, and they being alone in a room, the defendant stated the plaintiff's connection with the cow, in the winter of 1823, detailing the circumstances, adding that if his (the defendant's) oath was allowed, he calculated to send the plaintiff to the state prison; that he

had told it to two others, and counselled with them; and should want Crandall, who was a constable, to serve the process; but the process was never brought to him. The defendant urged him not to tell until after the trial, as the plaintiff might run away if he heard of it.

The plaintiff also proved that on the 7th of March, 1825, the defendant caused a warrant against the plaintiff to be issued on the defendant's oath, by a justice, upon which the plaintiff being arrested and brought before the justice, the defendant was sworn, and testified circumstantially to the commission of the crime. The plaintiff then went into his defence, which consisted of proof to show that the defendant was very infirm at the time he alleged the offence to have been committed; that he was weak and nearly blind, forgetful, and his mind very much impaired by age, so that he was liable to be deceived, and could not distinguish as to what he had sworn at the distance he represented himself as standing. The defence occupied 3 or 4 hours, and counsel summed up on the part of the accused, who was then discharged by the justice.

The plaintiff also proved that after the acquittal, the defendant insisted to several persons who were present at the hearing before the magistrate, that though the plaintiff had been acquitted, the charge, and what he had sworn, were true; and threatened further proceedings.

The judge decided that calling witnesses and going fully into the defence, was an admission of probable cause; and that the count for a malicious prosecution was not sustained. He said his mind was also influenced, on this point, by the circumstance that the defendant was in his second childhood. As to the counts for slander, he decided that all the declarations proved to have been uttered previous to the prosecution, were made in confidence, and *preparatory to the complaint; and were so connected with it, that no action could be sustained on them; and that they must follow that branch of the suit which related to a malicious prosecution. And as to declarations after the examination before the justice, he decided that hearers having attended the examination, and heard the defendant's testimony there, repeating

[*143]

the same charge to them was not actionable. And he non-suited the plaintiff upon all the counts.

*J. A. Collier* now moved to set aside the non-suit and for a new trial. He denied, that merely going into the defence, could be considered an admission of probable cause. Such a rule would protect the defendant, even if he had perjured himself. The perjury could not be shown without a full defence. The law will not put the accused to an election, either to submit upon false testimony, or lose his action. He cited 2 Phil. Ev. 113 ; 1 T. R. 544.

There was no right to make any slanderous communication to Crandall, the constable, even if he had served the process; but he did not. Beside ; the defendant had mentioned the circumstances to two others, and repeated them after the examination. The question whether confidential, and therefore not malicious, should have, at least, been left to the jury. (3 John. 180.) It matters not that the communications were to persons who attended the examination. The argument is, that the charge may be repeated as long as any body can be found who has attended a trial and acquittal. It cannot be that the defendant was protected in speaking, except as a witness, or on his complaint to the officer before whom the inquiry was to be conducted. (1 Esp. Rep. 226; 1 M. & S. 273, 282 ; 2 Phil. Ev. 107, 109.) Suppose the repetition of the charge out of court had been by counsel employed for the prosecution; is there a doubt that it would be deemed slander ? It would be so because repeated without necessity.

[*144]        *L. Clark,* contra. Here was no semblance of a malicious prosecution. There was no attempt to impeach the defendant's moral credibility. The evidence merely went to show that he must have been mistaken, which was consistent with the most complete innocence. The judge did not confine himself to the ground that a defence was gone into before the justice ; but adverted to the state of second childhood in which this defendant was proved to be. The charge abundantly appears to have been a case of honest

mistake, instead of malice and want of probable cause. Malice alone is not sufficient; (3 Esp, Rep. 7 ; 9 East, 261 ;) and the defendant's evidence before the justice shows probable cause.

As to the slander; a man has a right to confer with his neighbors about prosecuting for a felony which has been committed; and this defendant did no more. The declarations subsequent to the examination, were no more than a denial that the defendant had sworn falsely ; and that, too, in the presence of those only who attended the examination. To them it was a mere repetition of what he had said in court. It was communicating nothing new, nor any thing so strongly as the hearers had witnessed before when the defendant spoke under oath. He cited Wheat. Selw. 965 ; 4 Co. 16, a; Cro. Eliz. 502 ; 2 Salk. 696, to show that where the case is such that no damage can be received by the charge, an action does not lie; likening it to a charge which is not actionable in itself, though it be morally slanderous.

*Curia, per* WOODWORTH, J. On the count for a malicious prosecution, I think the action cannot be sustained. We cannot say there was a want of probable cause, although it may satisfactorily appear that the defendant, owing to defective sight, advanced age and bodily infirmity, was mistaken. There is no sufficient reason for believing that he was not persuaded of the truth of the facts related by him under oath ; and though the plaintiff was acquitted, it is possible the defendant may have been correct. At any rate, his statement may be considered as probable cause.[1]

[1] Although the law naturally inclines to favor those who exert themselves to give effect to its criminal provisions, it will not allow its forms to be made the engine of oppressing the innocent without giving them an opportunity of redress. 1 Chit. Cr. L., 10 ; 3 Bla. C. 126, n. 14. And, therefore, to restrain the savage spirit with which appeals were anciently prosecuted, the 13 Edw. 1, c. 12, directed, that if the appellee were acquitted, the appellor should suffer a year's imprisonment and pay a fine to the king, besides the satisfaction to the party whose life he, by the prosecution, attempted to destroy; and if the appellor were incapable of paying it, his abettors should be liable to do it for him, and to suffer imprisonment in their own persons. 4 Bla. Com. 316.

Burlingame
v.
Burlingame.

*The counts for slander were supported. Laying aside all the defendant said on his applications, and his communications respecting the commencement of a criminal pro-

These severe penalties, and the restitution of goods being given on an indictment, soon rendered this proceeding rather a matter of curiosity than of practice. Ib.

The ancient remedy, for the malicious prosecution of an indictment, was either a writ of conspiracy or an action on the case in the nature of a conspiracy, or an indictment, when several parties united in the evil design, 1 Saund. 230, n. 4; Cro. Car. 239; Cro. Eliz. 701; 2 Sel. N. P. 1053. And, at the present day, the latter proceeding is sometimes resorted to, where the circumstances are of a very dark coloring. 2 Burr. 993; 1 Bla. Rep. 368; 4 Wentw. 96; Staundf. P. C., b. 2, ch. 23. But an action on the case (see *Clark* v. *Haines*, 2 Rand. 440,) for a malicious prosecution, is now the more usual, as it is the easier and more effectual remedy. 2 Sel. N. P. 1050. Over the old writ of conspiracy it has great advantages; for the latter could only be brought where the life of the plaintiff had been in danger, (1 Saund. 230, n. 4; Fitz. N. B. 116; 1 Ld. Raym. 379,) and where he had been "lawfully acquitted," which intended such a discharge as would be a good bar to any subsequent proceeding; (Bro. Abr. Conspiracy, 23; Gilb. Cas. L. & E. 199; 1 Sel. N. P. 1054;) but the modern remedy by action on the case, lies wherever there has been a malicious prosecution of any criminal charge without probable cause, and which has occasioned any damage to the person, character, or property of the plaintiff. 10 Mod. 148, 214; 12 Mod. 208; Gilb. Cas. L. & E. 185, 202; see precedent and notes, 2 Chit. Pl. 612, 4th ed. So it lies where the indictment has been thrown out by the grand jury, (2 Rol. Rep. 188; Cro. Jac. 490,) where it has been preferred before an improper tribunal, (1 Rol. Abr. 112,) and where the discharge has arisen from a defect in the proceedings. 4 T. R. 247; 2 Sel. N. P. 1055. Besides, the writ of conspiracy could only be granted where more than one was accused of conspiring, (Fitz. N. B. 116; 1 Saund. 230, n. a.; Carth. 417,) and all the old cases of malicious prosecution called writs of conspiracy, (see Cro. Car. 239; Cro. Eliz. 701,) are no more than mere actions on the case which were always valid against one alone. Fitz. N. B. 116; Carth. 417; 1 Saund. 230, a. In the action for a malicious prosecution, the damage sustained by the plaintiff is the ground of the proceeding, and not any secret motives by which the guilt of the defendant may be increased, (Carth. 416; Bul. N. P. 14,) and, therefore, though the words *"per conspirationem per eos per habitam"* be introduced, they will be mere surplusage, and can in no way affect the right of the party injured to recover. 1 Saund. 230, n. a. Thus, where these words are inserted in a declaration against two persons, and one of them only appears, proceedings may be carried on against one alone. Bro. Ab. Conspiracy, 38; 1 Ld. Raym. 397. So if all the defendants are acquitted but one, he may be found guilty, and judgment given against him. 2 Inst. 562; Cro. Car. 236; Sir Wm. Jones, 94; 1 Rol. Abr. 111, 112; 2 Show. 50; 6 Mod. 169; 1 Saund. 230, n. a.

secution, there was evidence sufficient to maintain the action. Before the prosecution was instituted, the defendant made the charge to Anderson Crandall. That does not ap-

It seems to have been formerly thought that no action could be maintained where the acquittal arose from some technical objection, and no guilt was imputed by the indictment, nor any imprisonment endured; but it is now settled that, in such case, the mere fact of the plaintiff's having been put to expense by the proceedings is a sufficient ground to entitle him to redress. 1 Ld. Raym. 374; Carth. 416; 2 Stra. 691; 1 Salk. 13; 4 T. R. 247; Gilb. Cas. L. & E. 185; 10 Mod. 148, 214. And an action lies for the malicious prosecution of a bad indictment for perjury. 5 B. & A. 634; 1 Dow. & Ry. 266. So an action lies for maliciously obtaining or executing a search warrant for smuggled goods, though none such are found. 1 T. R. 535, n.; 1 Dow. & Ry. 97; 2 Chit. Rep. 304. And a man may recover in an action for a malicious prosecution of his wife, of which he has paid the expenses. Rep. Temp. Hardw. 54; 2 Stra. 977.

But though actions for malicious prosecution are thus allowed, they are by no means encouraged by the courts. 1 Salk. 15. In order to support them, there must have been want of probable cause for the prosecution—malice express or implied—and an injury sustained by the plaintiff, either in his person by imprisonment, his reputation by scandal, or his property by expense. 2 Sel. N. P. 1056, 1057.

There must have been no probable ground of prosecution. 3 Dow's Rep. 160, 180, 181, 182, 187. It is a mixed proposition of law and fact whether there was probable cause, and whether the circumstances alleged to show it probable, are true, and existed as matter of fact: but whether or not, supposing them to be true, they amount to a probable cause is question of law. 1 T. R. 520, 534; Bul. N. P. 14; 4 Burr. 1974; 2 B. & C. 693; 4 Dow. & Ry. 107; 1 Carr. Rep. 138, 204; 1 Gow. C. N. P. 20; *Morris* v. *Corson,* 7 Cowen, 284; *M'Cormick* v. *Sessions,* 7 Cowen, 717; *Ulmer* v. *Leland,* 1 Green. 135.

*North Carolina.*—In an action for a malicious prosecution, the dismissal of a state's warrant by the magistrate, who tried it, is *prima facie* evidence of the want of probable cause, and throws upon the prosecutor the burthen of proving that there was probable cause. *Johnson* v. *Martin,* 2 Murphy, 248; *Secor* v. *Babcock,* 2 Johns. 203; see *Findley* v. *Buchanan,* 1 Blackf. (Ind.) 12.

*Massachusetts.*—A conviction of the plaintiff before a justice of the peace, having jurisdiction, is conclusive evidence of probable cause. *Whitney* v. *Peckham,* 15 Mass. 243. But see *Burt* v. *Place,* 4 Wend. 598. See further, on this head, *Maddox* v. *Jackson,* 4 Munf. 462; *Cotton* v. *James,* 1 Barn. & Adol. 128; *Pierce* v. *Thompson,* 6 Pick. 193.

As to the question of probable cause—how far one of law, and how far one of fact, see *M'Cormick* v. *Sessions,* 7 Cow. 717; *Ulmer* v. *Leland,* 1 Greenl. 135; *Leggett* v. *Blount,* 2 Taylor, 123; *Munns* v. *Dupont,* 3 Wash. C. C. 31; *Colman* v. *Wolcott,* 1 Connecticut, 285; *Kelton* v. *Bevins,* Cook, 90;

ALBANY,
Feb. 1828.
————
Burlingame
v.
Burlingame.

pear to have been in the way of consultation. The de
fendant merely said he should want Crandall, who was
a constable, to serve the process ; but it was not deliver‧

*Crabtree* v. *Horton*, 4 Munf. 59 ; *Maddox* v. *Jackson*, id. 462 ; ·2 Stark. Ev.
(5th Am. ed.) 493 and n. (K.)

It is not necessary that there should have been any legal grounds for the
action ; for it will suffice to excuse the prosecutor if it appear, from the cir-
cumstances of the case, that he was not actuated by improper motives, but
by a sincere belief that the party accused was guilty, and an anxiety to bring
him to justice. Cro. Jac. 193.

In an action against a magistrate for a malicious conviction, it is not suffi-
cient to show that the plaintiff was innocent of the offence of which he was
convicted, but he must also show, from what passed before the magistrate,
that there was a want of probable cause. 1 Marsh. 110 ; 5 Taunt. 580, S.
C. But it is no answer to this action that the defendant was encouraged in
what he did by the opinion of counsel, if the statement of facts was incor-
rect, or the opinion ill founded. 5 Taunt. 277 ; 2 B. & C. 693 ; 4 Dow. & Ry.
107 ; 1 Carr. Re. 204 ; see 4 Serg. & R. 23. ◦Whether the opinion of the
prosecuting officer, in favor of the legality of the prosecution, be evidence of
probable cause. *Quære. Thompson* v. *Mussey*, 3 Greenl. 305.

Besides the want of probable cause, malice must also be shown, either ex-
press, or apparent from the proceedings. See *Warner* v. *Bruen*, 4 Rogers'
Rep. 92 ; *Kelton* v. *Bevins*, Cooke, 90 ; *Somner* v. *Wilt*, 4 Serg. & Rawle, 19,
23 ; *Kerr* v. *Workman*, Addis. 270 ; *Turner* v. *Walker*, 3 Gill & Johns. 377.

Whether a suit was brought maliciously, and for the purpose of vexing
and oppressing the defendant, is a question for the jury under all the circum-
stances of the case. *Ray* v. *Law*, 1 Peters' Rep. 210. And therefore, in an
action for a malicious prosecution, it will not be sufficient to show, in addi-
tion to the record of acquittal, that, after the indictment was ready for trial,
the prosecutor was called and did not appear, on which an immediate acquit-
tal was directed without further proof of express malice, or at least of cir-
cumstances showing an entire want of all probable cause on which the pro-
ceeding rested. 9 East, 361. And it is said, that wherever the grand jury
find the bill of indictment, express malice must be shown on the part of the
individual indicting ; though it will be otherwise if the facts necessarily lie
within the knowledge of the original prosecutor, for then he must prove that
he had reasonable grounds of suspicion, or the plaintiff will be entitled to re-
cover. 1 Ld. Raym. 381 ; Bul. N. P. 14 ; 9 East, 362, n. b. ; 2 Selw. N. P.
1050, n. 1. There seems also to be a material distinction between malicious
prosecutions and malicious convictions ; in the former, if it be shown that
there was no probable cause whatever, malice must be inferred, because the
prosecutor has sworn to the truth of a charge manifestly unfounded. But,
in actions for malicious convictions on penal statutes, the question of proba-
ble cause does not depend on the actual guilt or innocence of the party, but
of the testimony given before the magistrate ; and, therefore, to support the
latter action, the depositions must be given in evidence. 1 Marsh. 220. And

ed to him.   If, by adding such a remark, the defendant is
to be protected in speaking the slanderous words, I appre-
hend it would introduce a principle not heretofore recog-

even where the indictment has been thrown out by the grand jury, if it were
only for a trifling misdemeanor, some evidence, however small, must be of-
fered of a malevolent design.   1 Marsh. 12 ; 5 Taunt. 187 ; *Sed vide,* 4 B. &
C. 24.   It has also been laid down, that where a defendant has been acquit-
ted on the trial, he need not, in the first instance, show express malice in the
party by whom he was indicted, in order to support an action for a malicious
prosecution ; but where the indictment is quashed for informality, an express
malice must, in the first instance, be shown by the plaintiff.   Willes, 520.

In general, both malice and the want of probable cause, either express or
implied, must appear, to entitle the plaintiff to recover.   Bul. N. P. 14 ; 4
Burr. 1974 ; see *Kelton* v. *Bevins,* Cooke, 90 ; *Munns* v. *Dupont,* 3 Wash. C.
C. R. 31 ; *Marshal* v. *Bussard,* Gilmer, 9 ; *Bell* v. *Graham,* 1 Nott & M'Cord,
278 ; *Lindsay* v. *Larned,* 17 Mass. Rep. 190 ; *Vanduzor* v. *Lindermand,* 10
Johns. R. 106.

It is certain that malice will not suffice if there were any apparent cause
for the proceedings.   Bull. N. P. 14.   And though malignity may, in some
cases, be fairly inferred from the want of grounds to support the proceedings,
(*Bennet* v. *Black,* 1 Stewart, 39,) the latter can never be collected from the
most positive proof of the former.   1 T. R. 545.   So that, in every case,
the plaintiff must give evidence, however slight, that no grounds existed for
the proceedings, before the defendant can be called upon to answer.   2 Selw.
N. P. 1056, n. 2.   The question whether he has succeeded in doing this, is
partly of law and partly of fact ; whether the circumstances alleged on either
side are true or false, is a matter of fact to be left to the jury ; whether, if
true, they prove a reasonable ground of prosecution, or the reverse, is an in-
ference of law on which the court alone can decide.   1 T. R. 445 ; Bull. N.
P. 14 ; 2 Sel. N. P. 1056, n. 1 ; Id. 1061.

*New York.*—No action will lie against a person in this state for suborning
a witness to swear falsely in a cause in another state, whereby a judgment
was given against the defendant in that state contrary to the truth and jus-
tice of the case.   *Smith* v. *Lewis,* 3 Johns. Rep. 157.

*Connecticut.*—A person may be liable for prosecuting a suit commenced by
him maliciously, and without probable cause, while an infant.   *Sterling* v.
*Adams et al.,* 3 Day, 411.

The damage, as we have just seen, must either be to the person, by im-
prisonment ; to the reputation, by scandal ; to the property, by expense.
With respect to the imprisonment, any momentary detention seems sufficient.
But the plaintiff cannot recover damages for an imprisonment after a jail de-
livery, for it was his own fault to lie in the prison after.   Bro. Damages, pl.
115 ; Sayer, Damages, 87.   As to the scandal, it seems that any charge
which would be a libel if not preferred in the course of legal proceeding,
would be sufficient ; but an indictment for a mere trespass, as an assault, &c.,
would not.   See 12 Mod. 210 ; Gilb. L. & E. 202 ; 2 B. & C. 494 ; 3 Dow. &

nized by the law. He also uttered the slander after 1 acquittal. He did this at his peril. If A. prefers a crî inal charge against B., on oath, and B. is acquitted, a.... afterwards A. reiterate the charge, he has no privilege beyond that of any other person who utters a slander. He is bound to justify, or abide the consequences. After an acquittal, it would seem to be manifestly unjust to permit an accuser t) repeat the same slander with impunity. Silence on his part should be observed, unless he be willing to assume proof that his words are true. Whether the words were uttered in the hearing of persons who attended the trial, or of others who were absent, does not, in my view, make any difference. Though made to the former, it is certainly calculated to injure. If there be any difference, it is only in degree. It is an attempt to fix guilt on the accused after he has been legally declared innocent. The hearer who may have retired from the trial undre favorable impressions towards the accused, is still liable to be operated on by an accuser, who persists in the charge, and goes into a detail of circumstances to impress its truth on the mind. The law does not afford any special protection in such cases.

The non-suit must be set aside, and a new trial granted, with costs to abide the event of the suit.

Rule accordingly.

Ry. 669. Injury to the property, by expense, is a sufficient ground for supporting the action. Gilb. L. & E. 185, 202; 1 T. R. 518; Carth. 421; 14 East, 302, 305.

See Waterman's Archbold's Criminal Practice and Pleading, vol. 1, p. 205, et seq. from which the foregoing note has been chiefly taken!