JOSEPH GRANT *v.* JOSEPH H. MOORE AND E. J. MOORE.

ORDER GRANTING A NEW TRIAL.—If the Court below makes an order granting a new trial, and for any cause the order was correct, the appellate Court will not set it aside because the reason assigned for it may have been wrong.

MALICIOUS PROSECUTION.—To maintain an action for malicious prosecution, the primary question to be considered is the want of probable cause for the prosecution complained of, and this must be established before plaintiff can recover.

SAME.—From the want of probable cause, malice may be inferred; but from the most express malice want of probable cause cannot be implied.

WANT OF PROBABLE CAUSE IN MALICIOUS PROSECUTION.—In an action for malicious prosecution, the want of probable case is a mixed question of law and fact.

THE WANT OF PROBABLE CAUSE NOT TO BE SUBMITTED TO A JURY.—In an action for malicious prosecution, it is erroneous for the Court to leave to the jury the decision of the question whether the facts they may find will amount to a want of probable cause.

HOW JURY TO BE INSTRUCTED ON WANT OF PROBABLE CAUSE.—In an action for malicious prosecution, if the facts are doubtful, the Court should instruct the jury that if they find the facts in a certain way, there was no probable cause, and their verdict should be for plaintiff; but if they find in another way, there was probable cause, and their verdict should be for the defendant.

WHEN THERE IS PROBABLE CAUSE.—If, in an action for malicious prosecution, it appears that the defendant had a cause of action in the case alleged to have been maliciously brought, although for a much less amount than claimed, there was probable cause, and the Court should grant a nonsuit.

PLAINTIFF MUST PROVE WANT OF PROBABLE CAUSE.—In an action for malicious prosecution the burden is on the plaintiff to show affirmatively a want of probable cause.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Edward Tompkins*, for Appellant.

The Court erred in holding that the question of want of probable cause is a mixed question of law and fact, to be determined by the Court. The mere statement that there are facts to be determined, when there is a jury, settles by whom they are to be decided. It is as exclusively the province of the jury to find the facts as of the Court to determine the law, and the very authorities cited by the Court in its opinion sustain in the fullest manner the law as stated by the Court

in its charge to the jury. The charge was right, and the modesty of the Court has made it admit itself in error, when in fact no error had been committed. An examination of the cases will demonstrate this in the fullest manner. These cases are: *Potter* v. *Seale*, 8 Cal. 220 ; *Besson* v. *Southard*, 10 N. Y. 236 ; *Bulkley* v. *Smith*, 2 Duer, 260, and *Bulkley* v. *Kitillas*, 2 Selden, 348. These are the cases, and the whole of them, upon which the Court below has decided that " the want of probable cause is a mixed question of law and fact, to be determined by the Court "—the fact as well as the law —and that " in actions of this nature " the province of the jury is gone. Whether there be conflict in the evidence or not, the Court decides all but the amount of damages. Whether the facts exist that under the law show a want of probable cause is the gist of the whole action. They do, or they do not, and the whole scope and bearing of the cases cited and relied on by the Court below, is that the jury are not only the judges, but the *only* judges of that plain question of fact. If there is no dispute about their existence or their non-existence, then these cases say that the question becomes entirely one of law for the Court, because there is nothing for the jury to decide. Facts that are undisputed do not need a verdict to settle them. In every case the distinction is kept plainly in view between the cases where there is no conflict in the evidence and those in which there is—and in *Potter* v. *Seale*, the Court go on and dispose of the case upon the express grounds (page 221) that the witnesses are unimpeached, " and there is not the slightest perceptible conflict between them." The Court add : " It is, then, one of the cases where the circumstances are clearly established'; and the only question to determine is, whether these circumstances, in themselves, constitute probable cause."

In the case of *Masten* v. *Deyo*, 2 Wendell, 427, Mr. Justice Marcy has anticipated the question here. He says: " It is conceded on all hands that the question of probable cause is a mixed question of law and fact ; and it would seem necessarily to result that the jury are to say whether the circumstances

relied on to show probable cause really existed, and the Court are to decide, if they did exist, whether they constituted probable cause. A Judge, therefore, who should assume the right to determine the whole question, to the exclusion of the jury, would encroach upon their province."

After stating that in that case, as here, it was contended by the defendant that the Judge and not the jury is to determine the question of probable cause, he proceeds: "It being, as all admit, a mixed question of law and fact, this general denial of the right of the jury to participate in its decision would establish an exception to that great and salutary principle that lies at the foundation of the right of trial by jury—*ad quæstiones facti, non respondent judices; ad quæstiones legis, non respondent juratores.*"

If it was admitted that any such technical rule existed elsewhere as is claimed by the respondents, is there any reason why it should be introduced here? The policy of the law is to keep all its proceedings as simple and uniform as possible. Our Constitution and Practice Act manifestly aimed at the entire separation of the provinces of Court and jury. The former is not even to charge the latter upon questions of fact. If it states the testimony, (Practice Act, Sec. 195,) so jealously is the distinction guarded, that it is required at the same time to "inform the jury that they are the *exclusive* judges of *all* questions of fact." Where is the authority, and if it existed, where would be the wisdom, in grafting on a judicial amendment to the statute, so that it should read, "except in actions for malicious prosecution, and then the Court shall decide both the law and the fact?"

*D. S. Wilson,* and *S. M. Wilson,* for Respondents, argued that the Court erred in leaving the question of probable cause for the prosecution of the attachment suit to the jury, and cited *Potter* v. *Seale,* 8 Cal. 220; *Bulkley* v. *Smith,* 2 Duer, 272; *Besson* v. *Southard,* 10 N. Y. 236; *Mums* v. *Dupont,* 1 American Leading Cases, 209; and *Savage* v. *Brewer,* 16 Pick. 453. They also argued that the proof of the three hundred

and thirty-nine dollars due, defeated the action, because there was not only "probable cause," but *actual* cause of action; and that if plaintiff intended relying on excessive attachment, he should have made that his cause of action, and that it was a necessary fact that the suit must have been ended and determined in *favor* of the plaintiff; that here it was decided *against* plaintiff, so far as cause existed at the time of the bringing of the suit; and cited *Vanderbilt* v. *Mathias*, 5 Duer, 307; *Gorton* v. *De Angelis*, 6 Wend. 420; and *Feazle* v. *Simpson*, 1 Scammon, 30.

By the Court, CURREY, C. J.

The complaint in this action is in the usual form for malicious prosecution. Its material allegations were traversed by the defendants' answer. The cause was tried by a jury, and a verdict of five thousand dollars was rendered for the plaintiff against the defendants, on which judgment was entered. The defendants thereupon applied for a new trial, which the Court by order granted. From this order the plaintiff has appealed. The motion for a new trial was based on several distinct grounds. The reason which the Judge assigned for making the order was that the Court erred in submitting to the jury the question of "want of probable cause" for the prosecution of the action, which the plaintiff alleged in his complaint was without probable cause and malicious.

The appellants' position is that the Court erred in granting the order appealed from, on the ground assigned therefor, and reference is made to authorities bearing on the subject, to show that the charge to the jury on the point was proper, and that the reason given for granting a new trial was not well founded, but in itself erroneous. Were we of the opinion the Court was in error in respect to the exact question on which the order was made, we would not be justified in reversing it, provided there was any other ground on which the order should have been made. If for any cause the verdict and judgment ought to have been set aside and a new

trial granted, the order should be allowed to stand, whether the reason assigned for it was right or wrong.   To hold otherwise would be to deprive the defendants of a right to which, if error intervened, they were entitled *ex debito justitiæ.*

The action which the plaintiff alleges in his complaint was prosecuted against him by the defendants maliciously and without probable cause, was an action of assumpsit, brought by the defendant Joseph H. Moore against the plaintiff Joseph Grant, in the District Court of the Twelfth Judicial District, on the 30th of October, 1863, for the recovery of twenty-one hundred and fifty dollars, with interest thereon from the 15th of August then last past.   Moore's complaint was duly verified.   At the time the action was commenced a writ of attachment was sued out, and placed in the hands of the Sheriff, who on the same day attached a fire-proof safe, the property of Grant, and on the day following attached certain shares of stock in a gold and silver mining company, supposed to belong to Grant, but which in fact belonged to other persons. Grant, by a verified answer, denied that he owed Moore anything whatever.   The cause was referred to and tried by a referee, and the result was that Grant obtained against Moore a judgment for three dollars and twenty-five cents.

*Want of probable cause in action for malicious prosecution.*

To maintain an action for malicious prosecution, the primary question to be considered is the want of probable cause for the prosecution complained of.   From the want of probable cause, malice may be inferred ; but from the most express malice the want of probable cause cannot be implied.   (*Potter* v. *Scale,* 8 Cal. 220 ; *Pangburn* v. *Bull,* 1 Wend. 352; *Stockly* v. *Hadridge,* 8 C. & P. 18.)

The learned Judge who tried the case charged the jury that probable cause is a mixed question of law and fact ; that where there is no dispute about facts it is the duty of the Court to determine whether there was probable cause for the prosecution or not, and then said : " But, as in this case, where the facts, which were adduced as proof of want of

probable cause, are controverted, conflicting evidence is to be weighed, and the credibility of witnesses is to be passed upon, it is a question for the jury, under the instructions of the Court as to the law, to decide whether or not there was probable cause for the prosecution of the suit by defendants." The jury were then directed to first ascertain and find from the evidence "whether or not the defendants, at the time they commenced the action and procured to be issued therein from the Twelfth District Court an attachment against the property of the plaintiff, had reason to believe the plaintiff was indebted to Joseph H. Moore, defendant, in the sum of twenty-one hundred and fifty dollars." The Judge next instructed the jury that "probable cause is a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true;" and also that a want of probable cause could not be inferred from any malice on the part of the defendants towards the plaintiff, if in fact such malice was found to have existed, and thereupon further charged that if the jury should come to the conclusion that probable cause existed for the defendants to commence and prosecute the action of Moore against Grant, or that they were actuated by an honest and reasonable conviction of the justice of the same, the verdict should be for the defendants ; but if from the evidence the jury should find the action to have been commenced and the attachment sued out and prosecuted by the defendants without probable cause and maliciously, they should find for the plaintiff.

*Want of probable cause a mixed question of law and fact.*

It is the familiar language of the authorities on the subject of the action for malicious prosecution that the want of probable cause is a mixed question of law and fact.  Mr. Justice Duer, in *Bulkeley* v. *Smith*, 2 Duer, 271, denominated the phrase "mixed question of law and fact" as deceptive, and observed that Judges, misled by it, are apt to content themselves with defining a probable cause, leaving the jury to decide whether

82

the facts of the case correspond with the definition, which he said was, in effect, leaving the whole matter to their determination. In *McCormick* v. *Sisson*, 7 Cow. 715, the Judge at the Circuit submitted to the jury, upon the evidence, whether there was probable cause. The Supreme Court, by Woodworth, Justice, set aside the verdict, which was for the plaintiff, and granted a new trial, saying: "Whether the circumstances are true is a matter of fact; if true, whether they amount to probable cause is a question of law." In *Pangburn* v. *Bull*, 1 Wend. 352, the Court below charged the jury that if from the testimony before them they should be of opinion ' that the prosecutions complained of were malicious and without probable cause, and that the defendant knew the facts to be so before and at the time of such prosecutions, they ought to find damages for the plaintiff, otherwise they should find the defendant not guilty. The Supreme Court held that this was submitting both the law and the fact to the jury, and therefore erroneous. In respect to these two decisions, Mr. Justice Marcy, in *Masten* v. *Deyo*, 2 Wend. 429, said: "They do not disapprove of submitting such questions to the jury, but they condemn the manner in which they were submitted. They by no means imply that the Court ought to assume the province of the jury and pass upon the facts, in case facts are in dispute, but they disapprove of the surrender by the Court of its own function—the exercise of the right to pronounce the law to the jury." In an earlier portion of the same opinion the learned Judge said: "It is conceded on all hands that the question of probable cause is a mixed question of law and fact; and it would seem necessarily to result that the jury are to say whether the circumstances relied on to show probable cause really existed; and the Court are to decide, if they did exist, whether they constituted probable cause. A Judge, therefore, who should assume the right to determine the whole question to the exclusion of the jury, would encroach upon their province."

In the case cited from 2 Duer, the Court said: "Every rule of law depends for its application upon a given state of facts,

and where the facts upon which it depends are controverted and doubtful, they must, of necessity, be ascertained by the verdict of the jury; but whether the facts are admitted or disputed, it is equally the duty of the Judge to state explicitly to the jury the rule of law arising upon them, by which their verdict ought to be controlled—the only difference being, that in the first case the direction to the jury is positive; in the second, hypothetical."

*The jury cannot determine whether the facts found amount to want of probable cause.*

The want of probable cause is the gist of an action for mali-·cious prosecution, and must be affirmatively established before the plaintiff can be entitled to recover. Where the case is involved in uncertainty and doubt as to whether the plaintiff's alleged cause of action is made out, the want of probable cause is said to be a mixed question of law and fact. In *Bulkeley* v. *Keteltas*, 2 Seld. 387, the rule on the subject is stated in these words: "Where there is no dispute about the facts, the question of want of probable cause is for the determination of the Court. Where the facts are controverted or doubtful, whether they are proved or not, belongs to the jury to decide; or, in other words, whether the circumstances alleged are true, is a question of fact; but if true, whether they amount to probable cause, is for the Court." The rule thus stated limits the province of a jury to finding, from the evidence, whether the facts and circumstances alleged are true or not, and necessarily presupposes that if they are true, the action is made out; because, if they be true, and yet do not show a want of probable cause, it could be of no use to submit to the jury to find whether they were true or not, but the jury should be directed to find for the defendant. The true rule we conceive to be found in the following passage of the opinion of Mr. Justice Duer in *Bulkeley* v. *Smith*: "In an action for malicious prosecution, if the Judge is of the opinion that the facts admitted or clearly established are not sufficient to prove a want of probable cause, he must either nonsuit

the plaintiff or instruct the jury to find a verdict for the defendant; but if the facts upon which, in his judgment, the question depends, are rendered doubtful by the evidence, he must instruct the jury that if the facts shall be found by them in a certain manner, they do or do not amount, as the case may be, to a want of probable cause, and consequently will or will not entitle the plaintiff to the verdict which he seeks. If, instead of such direction, he leaves it to the jury to determine, not only whether the facts alleged by the plaintiff are true, but whether, if true, they prove a want of probable cause, he abjures his own functions and commits a fatal error." From these cases it may fairly be inferred to be unnecessary to instruct the jury as to what constitutes probable cause or the want of it.

The doctrine seems to be very generally settled that the question of want of probable cause is a mixed question of law and fact, involving two distinct considerations to be adjudicated by two different branches of the same tribunal at the same time; the sufficiency of the circumstances to constitute a want of probable cause being a mere question of law for the Court, and the evidence of the circumstances being for the consideration of the jury. Where the evidence is in a condition requiring the cause to be submitted to the jury, it is the duty of the Court to instruct them that if they find in a particular way there was no probable cause for the prosecution complained of, and their verdict should be for the plaintiff; but if they find in another way there was probable cause, and their verdict should be for the defendant. (1 Am. Lead. Cases, 218, 4 Ed.)

We now come to the examination of the charge which the Court in granting a new trial conceived to have been erroneous. The Judge defined in general terms what constituted probable cause, and no fault is to be found with the definition given; and he told the jury at the same time that it was a question for them, under the instructions of the Court as to the law, to decide whether or not there was probable cause for the prosecution of the suit by the defendants against Grant.

We think this charge committed to the jury more than it was their legitimate province to determine. In addition to the authorities already cited bearing upon this point, we refer to the facts and the opinion of the Court in *Bulkeley* v. *Keteltas.* In that case the Judge at the trial charged the jury that it was for them to determine whether the " circumstances proved in evidence do or do not establish a want of probable cause ;" and also that it was for the jury to say whether the plaintiff had failed to show the want of probable cause. The Court of Appeals held these instructions to be clearly erroneous, and then said : " The jury are told that it is their province to determine whether the facts and circumstances proved in evidence do or do not establish the want of probable cause. The Judge does not decide whether these facts and circumstances are sufficient or not, provided the jury believe them to be proved, but leaves the whole matter to the determination of the jury. If the Judge had supposed that the truth of the facts, as sworn to, admitted of a doubt, he should have expressed his opinion upon the law arising upon those facts, if proved, and then submitted to the jury the question whether they were credibly proved or not."

The law makes it the duty of the Judge who tries an action for malicious prosecution, to instruct the jury that as they may find and determine certain questions of fact, properly submitted to them, to be true or untrue, so must be their verdict for the plaintiff or for the defendant ; not that they should determine the question of the want of probable cause or the contrary. It may sometimes be difficult to state to the jury what the testimony is, and what facts if found to be true establish the plaintiff's allegation of want of probable cause ; but difficult as it may be, this duty is cast on the Judge in this kind of actions, because he is presumed to know, much better than the jury can, what facts show the existence of probable cause or the want of it. As the order must be affirmed, and the cause must be tried again, it becomes necessary to notice other questions, which were presented on the application for a new trial, than the one considered.

*What constitutes probable cause.* ·

When the plaintiff rested his case at the trial the defendants moved the Court to grant a nonsuit on various grounds. This motion was denied and the defendants excepted. One of the grounds assigned for the motion was that the plaintiff's proofs failed to show want of probable cause for the action of Moore against Grant; that on the contrary it affirmatively appeared that when that action was commenced Grant was indebted to Moore in a considerable sum of money.

The judgment roll in the case of Moore against Grant was given in evidence at the trial by the plaintiff. The referee's report shows that when that action was commenced and the attachment issued there was due from Grant to Moore at least three hundred and thirty-nine dollars and eight cents. Besides this it also appeared that a few days before then the parties had an accounting together respecting certain mining stock transactions, when it was ascertained and mutually agreed between them that Grant owed Moore a balance of something over three thousand dollars, and beyond this the referee found that there was due from Grant to Moore for money loaned the further sum of four hundred and twenty-six dollars; but that subsequently, and before the action was commenced, the amount thus supposed to be due Moore was reduced by money received by him in the sum of twenty-one hundred and seventy-three dollars, leaving due to Moore a supposed balance of thirteen hundred and seventy-eight dollars and fifty cents. After the trial of the cause had progressed for some time before the referee, the parties stipulated to submit to his determination, without reference to the pleadings, all matters in evidence in relation to the accounts as they then stood between the parties, and that judgment should be entered in conformity to the finding of the referee as to the true state of the accounts. The question respecting the true state of the accounts being thus opened for a re-examination, the referee found that in the accounting and settlement mistakes had intervened to the prejudice of Grant, amounting in the aggre-

gate to one thousand and thirty-nine dollars and fifty cents, and that the true balance due Moore at the time on the mining stock transactions was two thousand and eighty-six dollars and eight cents, which with the four hundred and twenty-six dollars also due him, amounted to two thousand five hundred and twelve dollars and eighty cents. That this sum was reduced before action brought by commissions and cash received by Moore to three hundred and thirty-nine dollars and eight cents, and that after the action was commenced there was paid on behalf of Grant to Moore the sum of three hundred and forty-two dollars and thirty-three cents. The disposition of the case by the referee, under the stipulation, made Moore debtor to Grant at that date in the sum of three dollars and twenty-five cents ; and having so found the facts the referee further reported as follows : " I therefore find, as a conclusion of law, from the foregoing facts, that at the time of the commencement of this action the defendant was justly indebted to the plaintiff in the sum of three hundred and thirty-nine dollars and eight cents, and that the plaintiff is now indebted to the defendant in the sum of three dollars and twenty-five cents, and judgment should be entered accordingly."

There was no evidence showing, or tending to show, that Moore was aware of any mistake in the accounting and settlement had between him and Grant respecting their mining stock transactions ; nor that he had any reason to doubt at the time that there was at least thirteen hundred and seventy-eight dollars and fifty cents due him. With all mistakes corrected, it was found by the referee that in fact there was due Moore when the action was brought the sum of three hundred and thirty-nine dollars and eight cents.

*Plaintiff must establish want of probable cause.*

In an action for malicious prosecution the burden is on the plaintiff to show affirmatively that there was a want of a probable cause. Instead of it so appearing, the evidence on the part of Grant was positive that Moore had a good cause

of action against him for at least the sum last named. There was no evidence showing that the property belonging to Grant which was attached exceeded in value the amount confessedly due. In truth, the evidence strongly tended to prove that it was not worth that sum. As the case stood at the time the motion for a nonsuit was made, it did not appear that the action of Moore against Grant was without probable cause; but on the contrary, from the undisputed facts in evidence on the part of the plaintiff, the existence of probable cause was shown. The plaintiff's case received no accession of strength from the testimony subsequently adduced, and consequently the error committed by denying the defendant's motion for a nonsuit was not cured.

We think the motion for a nonsuit ought to have been granted, and that having been denied, and the cause submitted to the jury, the Court should have instructed them that as there was no question upon the evidence as to the indebtedness of Grant to Moore at the time the action was brought by Moore against Grant, in the sum of three hundred and thirty-nine dollars and eight cents, the existence of probable cause affirmatively appeared, and consequently the defendants were entitled to a verdict. (*Bulkeley* v. *Smith*, 2 Duer, 274.)

The order granting a new trial is affirmed.

Mr. Justice SANDERSON expressed no opinion.

By the Court, CURREY C. J., on petition for rehearing.

In the petition for a rehearing the appellants' counsel takes the ground that the report of the referee finding that when Moore commenced his action against Grant and issued the attachment in that suit there was due from the latter to the former three hundred and thirty-nine dollars and eight cents, was not a finding authorized by the terms of the stipulation. And in support of this it is said that by the stipulation, dated May 6th, 1864, the parties agreed what the referee should pass upon, and that he was to go on and settle all matters in

which they were mutually interested; and the parties agree that the duty of the referee consisted in finding the actual state of the accounts at the time the stipulation was made, and not the state of the accounts at the commencement of the action of Moore against Grant. Be it so; and it then appears that the finding of the state of the accounts between the parties at the date of the stipulation involved an investigation of their condition when the suit of Moore against Grant was commenced. The report of the referee stated in detail the condition of the accounts between the parties to the suit before him, and showed that Grant was indebted to Moore over three hundred dollars when the attachment was issued. The condition of the account at that time was a matter involved in the investigation and was not open to contradictions on the trial of the suit of Grant against the Moores. If the position of the appellants' counsel, that the referee had nothing to do in determining the issues joined between the parties in the action of Moore against Grant was assumed to be correct, then it would follow as a matter of law that the subject matter of that action has never been determined, and consequently that the action of Grant against the Moores could not be maintained. Before an action for malicious prosecution can be maintained, it must appear that the action alleged to have been prosecuted maliciously and without probable cause was determined in favor of the party injured by it. (*Gorton* v. *De Angelis*, 6 Wend. 420; *Vanderbelt* v. *Mathias*, 5 Duer, 307; *McCormick* v. *Sisson*, 7 Cow. 715.)

The stipulation entered into on the 6th of May, 1864, was in effect that the referee should decide all matters in evidence in relation to the accounts between the parties without reference to the pleadings as they then stood, and that the pleadings should be considered as amended so as to cover the whole case, and that judgment should be entered in conformity to the finding of the referee as to the then true state of the accounts between the parties. The issues joined in the case of Moore against Grant had been referred when the parties

entered into this stipulation, and by the stipulation matters which were not embraced in that issue were submitted for the decision of the referee. The subject matter of the controversy between the parties was thus enlarged, and to that degree changed, and the judgment reported by the referee was different from what it necessarily could have been had the investigation been confined to the matters originally in issue, assuming that the referee found the facts truly. We are inclined to the opinion that the stipulation so changed the issues between the parties as to render the submission to the referee to ascertain what was the true state of the accounts between them at that time and to report a judgment accordingly, an arbitration of and concerning all matters in difference respecting the accounts between the parties up to that date.

The petition for a rehearing must be denied, and it is so ordered.

Mr. Justice SANDERSON expressed no opinion.